IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAYEED AKBAR, on behalf of himself and all others similarly situated,<br><br>                            Plaintiff,<br>    v.<br><br>THE GENIUS BRAND,<br><br>                            Defendant. | Case No. 1:21-cv-5041<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Sayeed Akbar ("Plaintiff"), by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge, against Defendant The Genius Brand ("Defendant").

## NATURE OF THE ACTION

1. This is a class action lawsuit on behalf of purchasers of Defendant's product, Genius Caffeine Extended Release Caffeine (the "Product"), in the United States.

2. Defendant is a self-described leading manufacturer and seller of "nootropics," which are supplements that allegedly improve brain functioning. Defendant's products are sold under the "Genius Brand" label.

3. One of Defendant's most popular products is Genius Caffeine Extended Release Caffeine, a caffeine supplement.

4. Caffeine supplements are essentially coffee in pill form. Caffeine from supplements can either be released either immediately (regular release) or over an extended period of time (time-release or extended release).

1

5. The Product is a time-release or extended release caffeine supplement. Defendant advertises the Product as being superior to regular-release caffeine supplements.

6. Specifically, Defendant represents that "[t]hrough a sustained release, microencapsulation technique, GENIUS CAFFEINE provides true sustained energy that simulates thermogenesis, accelerating the rate at which your body burns calories," among other representations described below.

7. However, these representations are false. A peer-reviewed study has found no difference between extended-release or sustained release caffeine pills, like the Product, and regular-release caffeine supplements.

8. Worse yet, Defendant charges a price premium for the Product based on the representations that the Product is superior to standard caffeine supplements.

9. Plaintiff is a purchaser of the Product who asserts claims on behalf of himself and similarly situated purchasers of the Product for (i) violation of New York General Business Law ("GBL") § 349, (ii) violation of GBL § 350, (iii) breach of express warranty, (iv) unjust enrichment, (v) negligent misrepresentation, and (vi) fraud.

## PARTIES

10. Plaintiff Sayeed Akbar is a resident of Queens, New York who has an intent to remain there, and is therefore a domiciliary of New York. In August 2019, Plaintiff purchased one bottle of the Product from Amazon (through which Defendant does significant business), and paid $14.99 for the Product. In purchasing the Product, Plaintiff relied on Defendant's representations that the Product "provides true sustained energy that simulates thermogenesis, accelerating the rate at which your body burns calories," "increas[es] resting metabolism and fat loss," "rais[es] your metabolic rate," and provides "all-day focus & energy" in a manner that was

2

superior to regular-release caffeine pills. Indeed, Plaintiff paid an additional amount for the Product above what he would have paid for regular release caffeine pills based on the Product's purported benefits. Had Plaintiff known that the Product did not produce the advertised effects, Plaintiff would not have purchased the Product, or would have paid substantially less for the bottle.

11. Defendant The Genius Brand is a Washington corporation with its principal place of business at 2204 McFarland 400 Boulevard, Alpharetta, Georgia 30004. Defendant markets, sells, and distributes the Product throughout the United States, including in the State of New York.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.

13. This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within New York, such that Defendant has significant, continuous, and pervasive contracts with the State of New York.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant transacts significant business within this District and because Plaintiff purchased and used the Product in this District.

**FACTUAL ALLEGATIONS**

15.     Defendant advertises, markets, sells, and distributes its own line of supplements, Genius Brand, throughout New York and the United States.

16.     Genius Brand supplements can be purchased online at Defendant's website, or at retailers such as The Vitamin Shoppe and Amazon.  In fact, Defendant maintains its own "Amazon store," and its employees have represented that the company is "Amazon based."

17.     Among Defendant's supplements is Genius Caffeine Extended Release Caffeine. On the back label of the Product, Defendant represents that the Product is "different than every other caffeine pill on the market because it's sustained release, ultra-pure trademarked NEWCAFF."  Thus, Defendant claims, the Product "provides true sustained energy that stimulates thermogenesis, accelerating the rate at which your body burns calories."



18. Defendant makes similar representations on its website. For instance, Defendant claims that

> GENIUS CAFFEINE provides true sustained energy, **increasing metabolism and fat loss** with an ultra-pure version of trademarked NEWCAFF caffeine. Genius Caffeine takes maximum advantage of an innovative controlled-release, micro-encapsulation technique, **providing a caffeine pill unlike any other on the market**.[1]

19. Likewise, on its Amazon product page (which Defendant maintains), Defendant represents that the Product "promotes thermogenesis, which **accelerates the rate at which your body burns calories**. It helps to suppress appetite for extended periods while **increasing resting metabolism and fat loss**."[2]

//
//
//
//
//
//
//
//
//
//
//
//

---

[1] GENIUS CAFFEINE, https://thegeniusbrand.com/products/genius-caffeine (emphasis added).

[2] GENIUS CAFFEINE, https://www.amazon.com/Genius-Caffeine-Microencapsulated-Supplement-Preworkout/dp/B01IRFX4NY (emphasis added).

5

20. Defendant also represents on its Amazon product page that the Product provides "a controlled release of caffeine, which can **continuously provide the desired alertness** and other benefits without unwanted results," as seen below:



21. Further, Defendant represents that the Product provides increased concentration and alertness benefits over regular-release caffeine supplements:

6



22. All in all, Defendant represents that the Product, as a time-release or extended-release caffeine supplement, is superior to a regular-release caffeine supplement in terms of metabolic function, calorie burning, energy, and alertness. Indeed, Defendant charges a price premium based on these representations. For example, Defendant charges $0.11 more per pill of the Product over a regular-release caffeine supplement without the aforementioned claims:

| Brand | Quantity | Price | Price Per Pill[3] |
|---|---|---|---|
| Genius Caffeine Extended Release Caffeine | 100 mg of caffeine per serving (167 mg of Newcaff), 100 capsules | $14.99 | $0.15 |
| Nutricost Caffeine Supplement | 100 mg of caffeine per serving, 250 capsules | $9.99 | $0.04 |

23. However, these representations are false. According to a peer-reviewed study in the Journal of Sports Science and Medicine, "the efficacy of time-release caffeine capsules appears to be **no different** than regular-release caffeine capsules."[4]

24. Moreover, the study found that the caffeine supplements and time-release caffeine supplements "administered during this study **did not alter metabolic measures**."[5]

//

//

//

//

//

//

//

//

---

[3] Calculated by dividing the total price of the product by the number of pills per bottle.

[4] Adam M. Gonzalez et al., *Effects of Time-Release Caffeine Containing Supplement on Metabolic Rate, Glycerol Concentration and Performance*, 14 JOURNAL OF SPORTS SCIENCE AND MEDICINE 322, 322 (2015) (emphasis added).

[5] *Id.* at 329 (emphasis added).

25. In addition, the study measured various metabolic and cardiovascular measures over an eight-hour period, such as resting energy expenditure. The study found "no significant differences between trials for changes" in these measures, and the measured values were largely identical between regular-release caffeine supplements and time-release caffeine supplements[6]:

Table 1. Metabolic and cardiovascular measures were measured at baseline (prior to supplement ingestion) and at each hour following ingestion of the supplement for a total of 8 hours. Data are means (±SD).

| | BL | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|---|
| **$VO_2$ (ml·min$^{-1}$)** | | | | | | | | | |
| CAF | 297 (30) | 331 (32) | 312 (47) | 301 (28) | 311 (38) | 329 (24) | 313 (31) | 312 (31) | 324 (34) |
| TR-CAF | 288 (27) | 331 (34) | 312 (36) | 298 (26) | 301 (23) | 337 (35) | 313 (24) | 310 (27) | 318 (29) |
| PL | 293 (25) | 337 (34)* | 299 (24)* | 288 (22) | 285 (22) | 324 (34)* | 304 (21)* | 306 (23)* | 309 (30)* |
| **$VCO_2$ (ml·min$^{-1}$)** | | | | | | | | | |
| CAF | 245 (25) | 294 (38) | 284 (39) | 257 (24) | 259 (27) | 274 (17) | 272 (26) | 270 (28) | 278 (25) |
| TR-CAF | 238 (17) | 289 (32) | 273 (38) | 256 (23) | 251 (22) | 283 (25) | 278 (31) | 272 (23) | 273 (30) |
| PL | 245 (27) | 300 (38)* | 266 (18)* | 248 (21)* | 238 (19) | 278 (35)* | 272 (15)* | 275 (24)* | 272 (27)* |
| **Respiratory Quotient** | | | | | | | | | |
| CAF | .83 (.05) | .88 (.05) | .90 (.06) | .85 (.06) | .84 (.06) | .84 (.06) | .87 (.04) | .87 (.04) | .86 (.02) |
| TR-CAF | .83 (.05) | .87 (.05) | .87 (.07) | .86 (.06) | .84 (.06) | .84 (.04) | .89 (.08) | .88 (.05) | .86 (.05) |
| PL | .84 (.05) | .89 (.05)* | .89 (.05)* | .86 (.05)* | .84 (.05) | .86 (.07) | .90 (.04)* | .90 (.05)* | .88 (.05)* |
| **Resting Energy Expenditure (kcal·day$^{-1}$)** | | | | | | | | | |
| CAF | 2058 (198) | 2326 (233) | 2231 (271) | 2099 (189) | 2158 (248) | 2281 (145) | 2185 (213) | 2177 (214) | 2257 (231) |
| TR-CAF | 1995 (170) | 2313 (237) | 2184 (253) | 2080 (170) | 2085 (152) | 2338 (232) | 2197 (170) | 2174 (182) | 2216 (206) |
| PL | 2034 (177) | 2368 (248)* | 2099 (154)* | 2008 (149) | 1977 (148) | 2261 (235)* | 2138 (138)* | 2153 (163)* | 2167 (203)* |
| **Heart Rate (beats·min$^{-1}$)** | | | | | | | | | |
| CAF | 57 (11) | 60 (11) | 62 (11) | 57 (10) | 60 (10) | 64 (13) | 59 (10) | 58 (10) | 61 (11) |
| TR-CAF | 56 (10) | 59 (9) | 59 (10) | 57 (10) | 59 (9) | 61 (11) | 60 (9) | 59 (10) | 62 (11) |
| PL | 58 (13) | 62 (12)* | 59 (10)* | 56 (9) | 57 (10) | 62 (12)* | 61 (8)* | 59 (10)* | 59 (10)* |
| **Systolic Blood Pressure (mmHg)** | | | | | | | | | |
| CAF | 120 (12) | 125 (12) | 124 (11) | 124 (11) | 123 (9) | 124 (13) | 119 (13) | 121 (13) | 124 (15) |
| TR-CAF | 120 (13) | 123 (15) | 121 (11) | 120 (13) | 120 (8) | 121 (12) | 124 (11) | 122 (12) | 123 (11) |
| PL | 122 (14) | 122 (11) | 120 (11) | 120 (15) | 121 (10) | 123 (9) | 121 (12) | 123 (11) | 122 (11) |
| **Diastolic Blood Pressure (mmHg)** | | | | | | | | | |
| CAF | 64 (8) | 67 (6) | 69 (5) | 70 (9) | 68 (9) | 63 (9) | 65 (9) | 68 (7) | 70 (5) |
| TR-CAF | 66 (8) | 66 (10) | 67 (7) | 67 (9) | 66 (6) | 65 (8) | 68 (6) | 67 (9) | 69 (10) |
| PL | 67 (8) | 65 (11) | 67 (6) | 67 (6) | 67 (6) | 66 (7) | 67 (7) | 66 (11) | 68 (6) |

PL=Placebo; TR-CAF= Time-release caffeine supplement; CAF=Regular caffeine supplement. * Significant increase (p<0.05) above BL, when data were collapsed across trials.

---

[6] *Id.* at 327.

26. The study also found no significant increase in feelings of energy, alertness or focus among those who ingested the time-release capsules, when compared with those who ingested regular-release caffeine supplements.[7]

27. In short, Defendant's representations that the Product "increas[es] metabolism and fat loss," "accelerates the rate at which your body burns calories," "increas[es] resting metabolism and fat loss," and provides "all-day focus and energy" more so than a regular-release caffeine supplement are false and misleading. The Product does not improve metabolic measures, energy, or focus more than regular-release caffeine supplements, if at all.

28. Plaintiff and similarly situated consumers paid a price premium based on Defendant's false and misleading representations. Plaintiff and similarly situated consumers would not have purchased the Product, or would have only paid a substantially reduced price for the Product, had they known that Defendant's representations were not true.

## CLASS ALLEGATIONS

29. Plaintiff seeks to represent a class defined as all persons in the United States who purchased the Product (the "Class"). Excluded from the Class are governmental entities, Defendant, Defendant's affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators, and anyone who purchased the Products for resale. Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

30. Plaintiff also seeks to represent a subclass consisting of Class members who purchased the Product in New York (the "Subclass").

---

[7] *Id.* at 322, 329.

31. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class and Subclass may be expanded or narrowed by amendment or amended complaint.

32. **Numerosity.** The members of the Class and Subclass are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiff reasonably estimates that there are thousands of members in the Class and Subclass. Although the precise number of Class members is unknown to Plaintiff, the true number of Class members is known by Defendant and may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

33. **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to:

    (a) whether Defendant's labeling, marketing, and promotion of the Product is false and misleading;

    (b) whether Defendant's conduct was unfair and/or deceptive; and

    (c) whether Plaintiff and the Class have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

34. With respect to the Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include whether Defendant violated New York's General Business Law ("GBL") §§ 349 and 350.

35. **Typicality.** The claims of the named Plaintiff are typical of the claims of other members of the Class in that the named Plaintiff was exposed to Defendant's false and misleading marketing, purchased the Products, and suffered a loss as a result of that purchase.

36. **Adequacy of Representation.** Plaintiff is an adequate representative of the Class and Subclass because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class and Subclass. Furthermore, Plaintiff has no interests that are antagonistic to those of the Class or Subclass.

37. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class and Subclass members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant. It would, thus, be virtually impossible for the Class or Subclass on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if Class or Subclass members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

## CAUSES OF ACTION

### COUNT I
### Violation of GBL § 349

38. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

39. Plaintiff brings this claim individually and on behalf of the members of the Subclass against Defendant.

40. By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by making false representations regarding its Product.

41. The foregoing deceptive acts and practices were directed at consumers.

42. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent that the Product, as a time-release caffeine pill, "increas[es] metabolism and fat loss," "accelerates the rate at which your body burns calories," "increas[es] resting metabolism and fat loss," and provides "all-day focus and energy" more so than a regular-release caffeine pill.

43. Plaintiff and members of the Subclass were injured as a result of Defendant's deceptive acts and practices because they would not have purchased the Product, or would have paid substantially less for it, if they had known that the Product would not "increas[e] metabolism and fat loss," "accelerate[] the rate at which your body burns calories," "increas[e] resting metabolism and fat loss," and provide "all-day focus and energy" more so than a regular-release caffeine pill.

44. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent that the Product, as a time-release caffeine pill, is superior to a regular-release caffeine pill in terms of the Product's metabolic and concentration

13

effects, when in fact the Product's metabolic and concentration effects are identical to that of a regular-release caffeine pill.

45. On behalf of himself and other members of the Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover his actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorney's fees.

## COUNT II
## Violation of GBL § 350

46. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

47. Plaintiff brings this claim individually and on behalf of the members of the Subclass against Defendant.

48. Based on the foregoing, Defendant engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law by misrepresenting the benefits of the Product.

49. The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

50. These misrepresentations have resulted in consumer injury or harm to the public interest.

51. Defendant alone possessed the knowledge that the Product was not superior to a regular-release caffeine pill in terms of the Product's metabolic and concentration effects.

52. As a result of Defendant's misrepresentations, Plaintiff and members of the Subclass have suffered economic injury because they would not have purchased the Product, or would have paid substantially less for it, if they had known that the Product would not

"increas[e] metabolism and fat loss," "accelerate[] the rate at which your body burns calories," "increas[e] resting metabolism and fat loss," and provide "all-day focus and energy" more so than a regular-release caffeine pill.

53. On behalf of himself and other members of the Subclass, Plaintiffs seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorney's fees.

## COUNT III
## Breach Of Express Warranty

54. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

55. Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

56. Defendant, as the designers, manufacturers, marketers, distributors, and/or sellers, expressly warranted that the Product, as a time-release caffeine pill, "increas[es] metabolism and fat loss," "accelerates the rate at which your body burns calories," "increas[es] resting metabolism and fat loss," and provides "all-day focus and energy" more so than a regular-release caffeine pill.

57. In fact, the Product is not fit for such purposes because each of these express warranties is false. Particularly, the Product's metabolic effect is identical to that of a regular-release caffeine pill (if it carries such an effect at all).

58. As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and Class and Subclass members have been injured and harmed because they would not have purchased the Product, or would have paid substantially less for it, if they had known that the Product would not "increas[e] metabolism and fat loss," "accelerate[] the rate at which your

15

body burns calories," "increas[e] resting metabolism and fat loss," and provide "all-day focus and energy" more so than a regular-release caffeine pill.

59.     On September 8, 2021, prior to filing this action, Defendant was served via certified mail with a pre-suit notice letter on behalf of Plaintiff that complied in all respects with U.C.C. §§ 2-313 and 2-607.  Plaintiff's counsel sent Defendant a letter advising that Defendant breached an express warranty and demanded that Defendant cease and desist from such breaches and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiff's counsel's letter is attached hereto as **Exhibit 1**.

### COUNT IV
### Unjust Enrichment

60.     Plaintiff hereby incorporates by reference the allegations contained in all proceeding paragraphs of this complaint.

61.     Plaintiff brings this claim individually and on behalf of members of the Class and Subclass against Defendant.

62.     Plaintiff and Class and Subclass members conferred benefits on Defendant by purchasing the Product.

63.     Defendant has knowledge of such benefits.

64.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class and Subclass members' purchases of the Product.  Retention of moneys under these circumstances is unjust and inequitable because Defendant misrepresented that the Product was superior to regular-release caffeine supplements and charged a price premium based on those representations.

65.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class and Subclass members is unjust and inequitable, Defendant must pay

restitution to Plaintiff and the Class and Subclass members for their unjust enrichment, as ordered by the Court.

## COUNT V
### Negligent Misrepresentation

66. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

67. Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

68. As discussed above, Defendant misrepresented that the Product, as a time-release caffeine pill, "increas[es] metabolism and fat loss," "accelerates the rate at which your body burns calories," "increas[es] resting metabolism and fat loss," and provides "all-day focus and energy" more so than a regular-release caffeine pill.

69. At the time Defendant made these representations, Defendant knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

70. At an absolute minimum, Defendant negligently misrepresented material facts about the Product.

71. The negligent misrepresentations and omissions made by Defendant, upon which Plaintiff and Class and Subclass members reasonably and justifiably relied, were intended to induce, and actually induced Plaintiff and Class and Subclass members to purchase the Product.

72. Plaintiff and Class and Subclass members would not have purchased the Product, or would have paid substantially less for it, if the true facts had been known.

73. The negligent actions of Defendant caused damage to Plaintiff and Class and Subclass members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT VI
### Fraud

74. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

75. Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

76. As discussed above, Defendant provided Plaintiff and Class and Subclass members with false or misleading material information about the Product, including but not limited to the fact that the Product, as a time-release caffeine pill, "increas[es] metabolism and fat loss," "accelerates the rate at which your body burns calories," "increas[es] resting metabolism and fat loss," and provides "all-day focus and energy" more so than a regular-release caffeine pill.

77. These misrepresentations were made with knowledge of their falsehood.

78. The misrepresentations made by Defendant, upon which Plaintiff and Class and Subclass members reasonably and justifiably relied, were intended to induce, and actually induced Plaintiff and Class and Subclass members to purchase the Product.

79. The fraudulent actions of Defendant caused damage to Plaintiff and Class and Subclass members, who are entitled to damages and other legal and equitable relief as a result.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Class and the Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representative of the Class and Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass members;

(b)      For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c)      For an order finding in favor of Plaintiff, the Class, and the Subclass on all counts asserted herein;

(d)      For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)      For prejudgment interest in all amounts awarded;

(f)      For an order of restitution and all other forms of equitable monetary relief;

(g)      For an order enjoining Defendant from continuing the illegal practices detailed herein and compelling Defendant to undertake a corrective advertising campaign; and

(h)      For an order awarding Plaintiffs and the Class and Subclass their reasonable attorney's fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: September 9, 2021          Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Max S. Roberts*
       Max S. Roberts

Max S. Roberts
888 Seventh Avenue, Third Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Rachel L. Miller (*Pro hac vice* app. forthcoming)
701 Brickell Ave., Suite 1420
Miami, FL 33131
Tel: (305) 330-5512

19

Facsimile: (305) 676-9006
E-mail: rmiller@bursor.com

*Attorneys for Plaintiffs*